The next case this morning is 5-22-0378, Enray Marriage of Springer. Arguing for the appellant is Matthew Peek. Arguing for the appellee is David Moore. Each side will have 15 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning, counsel. Good morning, your honor. Good morning, your honor. Mr. Peek, are you ready to proceed? I am, sir. Then go right ahead. It pleases the court and counsel, Mr. Moore. Arguments this morning are actually fairly simple and straightforward. I won't belabor the court or Mr. Moore's time too much, I hope. We have four basic points of contention in this case. The first is the calculation of child support. The next is the division of property and debts. There was also a division of a marital account. And then there is a number of contempt petitions, six separate contempt petitions, that my client challenges. The first issue is the calculation of child support. I won't belabor it. It's contained in my brief. The calculation that was put forward by opposing counsel at trial, Mr. Clapper, was an incorrect calculation using the wrong number that was input into the online child support estimator in order to come up with the numbers that Mr. Clapper used. We feel that it is clear error of the court to use that number because that was the income of Mrs. Clapper as opposed to the gross income. And then when it was put through the estimator, it was that net number was further reduced. And so an improper number was arrived at by the estimator. And then the court still went ahead and used that number. The court didn't make any kind of, didn't give any rationale for using that number, just said we're going to use that number. When was that court, when was it suggested to that court that that number was incorrect? I believe we suggested at trial. And then I don't recall, Your Honor, whether I put that forth in my objections to the order that was prepared by Mr. Clapper. But both parties gave their calculations to the court, discussed it at length during the trial, excuse me, during trial. And ultimately that was the number though that was used by the court. It seems like a fairly straightforward argument for the court to hear and resolve quickly. If you're suggesting they use the net income and it should have been the gross income. The court did not comment at all on that. I don't recall any comment from the court judge. Our next argument is there were a couple of accounts, investment accounts that Mr. Springer had, and they were accounts that he had started approximately perhaps 10 years before the marriage. He started these accounts sometimes between 1985, 1988, that evidence was presented at trial. He testified at length that he had never provided any additional income into these accounts during the course of the marriage. Mrs. Springer was not aware of any monies that she had contributed to these accounts during the course of the marriage. One account was a mutual fund account that I believe is identified as AISVX. The AISVX account. And at some point around the year 2000, between 2000 and 2005, that account, the AISVX account had been listed as joint tenancy by the parties. Angela was listed as a joint tenant on that account. However, when we go and we look at the statute, 750 ILCS 5 slash 503 disposition of property and debts in section B1, 503 B1, we all know that property, marital property, everything is presumed to be marital property if acquired during the marriage, anything subsequent to the marriage. And then, of course, anything that is converted to any kind of joint ownership such as joint tenancy is also then presumed to be property of the marriage. However, under B1, the language there in B1, states that the presumption of marital property is overcome by showing through clear and convincing evidence that the property was acquired by a method listed in subsection A or a couple of tax reasons or was not intended to be a gift. In subsection A then, it just is property acquired before the marriage. So A6, before the marriage, except as it relates to retirement plans, this was not a retirement plan, it was an investment account, a mutual fund account. And so clear and convincing evidence, I think I submitted about 300 pages tracking the history of this account from when Mr. Springer had started the account as it was moved then from various fund managers throughout the life of the account and then ultimately was put into joint tenancy around 2005. However, and reasonably, Mr. Springer, we did establish that through clear and convincing evidence, this account was his sole property prior to the marriage, wasn't contributed to during the marriage, and was only put into joint tenancy between 2000 and 2005. And so the question then becomes, looking at the statutory language, the presumption of marital property is overcome, not maybe overcome. It doesn't give the court any discretion here. And so we would argue that we had shown through clear and convincing evidence that this account was, in fact, Mr. Springer's non-marital property that he had acquired prior to the marriage, had not converted it other than the transfer to joint tenancy, and so that the presumption should have been overcome and that account should have remained his own non-marital property. How do we know that wasn't a gift? I'm sorry, Judge? How do we know that wasn't a gift? There was no testimony that it was a gift. Mr. Springer did not testify that he intended it as a gift. He only testified that he intended it that as long as they had stayed married, to put it as joint tenancy, that way they would both have access to it during the marriage. Unfortunately, the marriage fell apart and they got divorced. But if they have access during the marriage, doesn't that go towards the intent to make it a marital asset? It possibly does, Your Honor, except the language of the statute states that that intent, the presumption of that intent is overcome by showing through clear and convincing evidence that it fit into one of these exceptions for disposition of property listed in 503A. And the trial court heard all the evidence. I'm sorry, Justice Barberis. Go ahead. The trial court heard all the evidence from the parties on this issue and found that it was marital property, correct? So basically you're telling us the trial court, or arguing the trial court's ruling was error. That is correct, Judge. Okay. Let me clarify for a moment. Just in case I know you want to follow up on your question, if you want to do that first, go ahead. No, I'm just wondering which exception. He keeps talking about the exceptions. I'd like to know which one he thinks this falls under. Thank you, Justice Barberis. Your Honor, I believe that's in 503A.6, property acquired before marriage. Okay, but then he puts it in her name, so it's available during the course of the marriage. So now you have to go to 503B1. That's correct. And then 503B1 then states the presumption of marital property is overcome by showing through clear and convincing evidence the property was acquired by a method listed in subsection A.  Okay. Thank you, Justice Barberis. So my only question is, and I don't know if you mischaracterized when you answered Justice Bowie's question, his intent to make it available to both parties during the marriage, but I thought I read somewhere in the brief that his intention was that in the event that he died or she died, that it would go to the survivor of the two of them, which in my opinion is a slightly different intent than to say it's for both of our use. And you can correct me if I'm wrong. His testimony was that it was for them to use during the course of the marriage. Either of them had access to it for that reason. I think that's significantly different than we're doing this just as a protection in the event one of us dies. There's no question as to the other one receiving those funds. That's my first question. But then the second question is she testified, if I recall, that she had expressed concern because these parties were married in 98. In 2005, I believe is when this was allegedly commingled. And if so, her testimony was that she was concerned that she was giving up her career and her retirement and that she, she wanted some assurances, financial assurances that upon reaching retirement age, she would have money since she was giving up a retirement. Now, obviously she continued teaching at some point thereafter and maybe have retirement somehow else. But was that your recollection with regard to this issue that she, she had testified to that? There was some testimony. Yes, judge on that issue. I recall that testimony that she was taking a little bit of time off for the children. Like, I don't think she took that much time off for the children. It was a very short period of time, maybe three to five years. She resumed teaching. She resumed paying into her own retirements. Her own retirements. We're not as large as Brett's because Brett's had been started 10 years prior to the marriage. However, I do believe that is correct. As you characterize it, that she'd wanted some assurances she'd wanted some security. And I don't recall that either of them had actually used the funds there. There was a question of use of one of the funds, but we were never able to nail down exactly what fund that money had been pulled out of since they were managed all three together. And it didn't show. That there was any diminution of any particular fund, but I do believe that is correct. As you've characterized. Well, with regard to my first part of that question, Did she. What was there? I'm sorry. I'm drawing a blank right now. Do you recall my first part of my question? Because I don't, but. I do. Justice Barbera's wanted to know if this was more of an estate planning thing where she would acquire it upon death versus having it available during the course of the marriage. I want to say it was a combination of both, that it was an estate planning issue. And then also. If they had to use it, if something had to be done, that her name would be on it and she would be able to do that. Thank you. Thank you. Justice Gates for. My memory on my own question. Thank you, Your Honor. And. Thank you. Lastly, there was the, the issue of contempt. There were. And I'm going to skip over the division of the marital account. It's in my brief. It's a question of math. It's, it's pretty straight up question of why I think, and I, I know Mr. Moore will address it as well. So. The issue of the contempt. The issue of the contempt. Was that Angela's attorney, Mr. Clapper had filed six separate. Rules to show cause contempt petitions. They. We don't believe that any of them were filed in the proper format. Brett did not contest the first three of those. He said, okay, I I'm behind up. I'll pay. I'll get caught up. That's fine. Great. We'll take care of that. But then the next three, he did contest because they, they seem to be coming more and more overwhelming. And. We, we challenged those on the basis that they weren't proper contempt petitions that at no point in any of the petitions, did they state what type of contempt they were seeking? Only that they were seeking contempt. And so. Based on. I believe it's in Ray bets and then in Ray Alco. I believe it's in Ray Betts and then in Ray Alco. Those matters. They do require a person seeking a contempt. Finding against another. To positively state in their pleading, the nature of the contempt that they're seeking. In order that the person who. Is being sought to be found under contempt. And the person who is being sought to be found under contempt. Can properly defend against that and, and know what the proper procedure is as well as the proper pleadings. And so bread is contesting. Like those, those last three. Contempt. Finding set aside. For the failure to properly. Alleged the contempt. Well, let me ask you this. Mr. Pete on those last three petitions. And obviously. You did object to the form. Were those three litigated. And was there a finding of contempt by the court and then a purge? They, they were litigated. There was a finding and yes, there was a purge. Okay. So. You were able to properly. Defend and litigate. Those, those three petitions. I wouldn't say properly your honor. As with one of them. And I don't remember what I believe it was the fifth petition. The judge. Had judge Gerton had issued a body attachment. For my client. And then, you know, the question is, well. You know, if you come in and you're going to be arrested or you can just go and you can pay this purge and you don't have to worry, you know, at your convenience and you don't have to worry about being arrested and take care of it. The judge Gerton. At that hearing. Because Mr. Springer was not present. Refused to allow me to present any evidence other than just to state my objection. He didn't allow any argument on the issue. And it was, it was essentially the same thing with the sixth petition that we dealt with. It was either at trial or right after trial. Where judge Gerton did not allow. Substantial amount of. Argument or opposition to that. He's just like, ah, he's in contempt. He's been in contempt. He's going to be in contempt and that's the way it's going to be. So. Unfortunately, it was. More of a summary proceeding, I suppose. Well, thank you. Before we move on to Mr. Moore, just as Kate, you're just as barbaric. You have any questions. I do have a question on the sixth petition for rule to show cause. It says that the respondent had previously been found in indirect civil contempt. And, but then. It seems to go on and ask that. Brett Allen Springer be sentenced. For his contempt. So it's. It's I'm wondering what happened on the sixth petition because it seems and maybe Mr. Moore is the better person to ask. But it seems to be that they've conflated civil and criminal. Contempt in their petition. That was a bit of our. Objection as well, that, that the petitions themselves. Never clearly sought out exactly what they were seeking. The sixth petition. If I recall was brought. The. Right before the eve of trial for. Brett's failure to file an updated financial affidavit. If I recall, but. Prior to the eve of trial. However. It it's very conclusory pleaded. It was a rule to show cause with, with very little notice. They were. Additionally, I should point out. That none of the rules to show cause were ever served on Brett. So, so that. To give him the proper time to respond. And that was objected as well in the fourth petition. And encompassing within my general objections to those. When they were brought up. So. Were you counsel of record at the time this was going on? I was Mr. Moore was not. Mr. Mr. Moore. Mr. Peek. Were you actually held in contempt at one point? I was not held in contempt. No. Okay. So just your client. Why are these not moot? If your client has already purged himself with the contempt. They're not moot because they go to the issue of attorneys fees. In this case, the attorneys fees were assessed against Brett. That he probably should not have had to pay. If not for the contempt findings. But he has paid them. That is correct. Your. Okay. Thank you. Thank you just for. Thank you. Anything else? Justin. Okay, thank you. Actually Mr. Peek, you're gonna have your. Time for your rebuttal. Mr. Moore, go right ahead. Thank you. May it please the court. Counsel. The appellate raises four issues of error. In his brief, I do note that all of the claims of error. Involved the trial court's discretion and they can be reversed only. Upon a manifest way to the evidence standard or an abuse of discretion standard. I want to. Start my argument with regards to the classification and distribution. Of the Morgan Stanley retirement accounts. Mr. Peek has argued that the. Account. Was non marital property. And as such should be. Classified as non-marital property and distributed to Mr. Springer. The trial court did not allow any evidence with regards to the non-marital. Character of the AIVSX account. Mr. Peek stated in his opening statement. That there were. No issues with regards to three of the Morgan Stanley accounts. They being marital. The trial court has broad discretion in the admission of evidence. The trial court ruled. That because of the late disclosure, the court would not allow. Any evidence with regards to the non-marital nature of that account. Therefore, there was no evidence. Before the trial court. There is no evidence before this court. With regards to the AIVSX claim of non-marital. Issues. Now. I also note that. The annuity account that Mr. Peek is claiming is non-marital. That issue was. Submitted to the trial court and determined by the trial court to be marital property. It is true that Mrs. Springer was added to the account. As a joint tenant with rights of survivorship. In 2005. And the burden then was on Mr. Springer to prove by clear and convincing evidence. That the addition of his wife to that account. Was in essence ministerial or for estate planning purposes or things of that nature. That was not the evidence before the court. The evidence before the court was that Mrs. Springer. And Mr. Springer decided that she would be a stay-at-home mom. And as such, she was concerned about losing her retirement benefits. Mr. Springer. And Mrs. Springer both testified that they went in together. That they put Mrs. Springer on the retirement accounts, the investment accounts. To take care of that issue. It was. I believe that there was sufficient evidence in the record to show donative intent. On behalf of Mr. Springer with regards to the Morgan Stanley accounts. The trial court did correctly determine that they were marital accounts and they were properly distributed. By the court. I believe on approximately a 50, 50 basis. The court. Mr. Springer. Yes. Those accounts were, were funded prior to the marriage, correct? By Mr. Springer. That is accurate. Did Mr. Springer. Make any contributions. During the course of the marriage to that account. Mr. Springer, Mrs. Springer. I don't believe that Mr. Springer made any contributions. Either. Not that I'm aware. To my knowledge, the accounts were set up prior to the marriage. They were. In essence held by Mrs. Springer prior to the marriage that he then transferred. A one half ownership interest in the account to Mrs. Springer. Because of their marriage, because of the children and contemplation for their future. So I believe that it is pretty clear that there was donated intent. And a gift to the marriage to Mrs. Springer and for their children. This testimony at trial though, is that. It was intended for. Primarily as a safeguard in case he were to die that she would have access to those funds. I don't believe that that was the entirety of his testimony. I believe that his testimony was that he was concerned about. Her retirement situation. And that he put her on the accounts. For the future. I believe that was his. His term for the future. His testimony that he was concerned for her retirement. Issues or that she had concerns about her retirement. And he. Went ahead and. Gave her. It. Gave her a benefit of her concerns by putting her on the account. I believe the latter statement is accurate. Okay. Thank you. Thank you. Thank you. Now with regards to the contempt petitions, I believe that. The law is fairly clear that no pleading is bad in substance. If it adequately informs the opposing party of the nature of the claim presented. In this case, all of the. Contempt petitions were titled petition for rule to show cause. Case law, as I've cited in my brief. Indicates when you claim something to be a petition of a rule to show cause that is. In essence, shorthand nomenclature for a petition for adjudication of indirect civil contempt. And direct civil contempt occurs when a party fails to comply with the court's order outside of the court's presence. It is brought to the court's attention, noncompliance. The purpose of a rule to show cause is to ensure compliance with a prior court order. That happened in this case. Mr. Springer was afforded the opportunity to contest the petitions against him. They were tried. He was found to be in contempt. Purge orders were entered. He did comply with the purge orders. So I agree with the prayer of justice that in the event that there was any infirmity in the underlying petitions, which I do not believe there was that they are now moved by his compliance. The last two arguments have to do with. Before you go on, I'm looking at your sixth amendment. Sixth petition for rule to show cause. And you don't ask for indirect civil contempt. You ask in your prayer for relief. That he again, again, Underline be held in willful and contumacious. Contempt and that he be sentenced. For contempt, which is jail time. And then the court issues. A rule to show cause saying why he should not be held in and punished. For contempt. That sounds to me like criminal contempt. I believe. I believe that the. Term sentence can be interpreted to mean either jail time or, or a more logical explanation is. Sentence in that there will be sanctions imposed as a result of Mr. Springer's willful noncompliance. And in order to have. A rule to show cause granted must show that there was an order entered and there was willful noncompliance. Now. The language may have been a little stronger than was necessary, but I think it was pretty clear. If you read the pleading as a whole. There is an allegation that there was an order entered that Mr. Springer failed to comply with it. The noncompliance was willful and he should be sanctioned accordingly. And I believe that's a reasonable interpretation of the language in that pleading. You don't believe that indirect civil contempt needs to be specifically pled as opposed to criminal contempt, direct contempt. I believe that. There was sufficient. Allegations in the pleading to alert Mr. Springer that the petitions were seeking indirect civil contempt. And I agree that better pleading practice would have been to say, this is a petition for adjudication of indirect civil contempt. However, that. We need to look at the substance of the. Sanctions that are sought, not the form of the pleading, the substance of the sanctions were sought simply were Mr. Springer failed to comply with the court's order. We were seeking compliance with the court's order. So you're aware of the case law that says. Contempt petition should be specifically planned. I am aware of that. And you think that. Your prayer for relief alerts them that you're only seeking. Indirect civil contempt. I believe when you look at the pleading as a whole, it does serve to alert them that we're seeking indirect civil contempt only not criminal contempt, indirect or direct criminal contempt, not seeking jail. I'm not seeking jail sanctions of any kind, simply civil compliance with the prior court's orders. Okay. Thank you. With regards to the course determination. With regards to child support. That once again is a discretionary matter addressed to the trial court. The trial court did state on the record that. It did receive both parties calculations with regards to child support. And simply. Ruled in favor of the. Petitioners determination with regards to child support. That's a factual finding based upon the record and should not be disturbed. Absent. I believe that abuse of discretion standard. I'm sorry. Go ahead. Justice. With regard to. With regard to. To that finding by the trial court. You're you're you're. Stating that the trial court was made aware. That Mr. Springer was. Suggesting that the number that Mrs. Springer used. And in putting that into the. The online calculator. Was her net income. When it called for her gross income to be in. Input into that. I believe that the trial court was aware with regard to the two competing. Calculations and the trial court did state in the record. And I did put it in my statement of facts that. When the calculations came in, the court looked at them. And decided that. Ms. Springer's calculations were more appropriate calculations in this circumstance. But how, how can the court make that determination when it had in front of it? Her tax return showing that. Her gross income was what Mr. Springer suggested. Not what Mrs. Springer had put into the calculation. I don't know, judge the, the court. I don't know how the court made that determination. But as I said, they made. The arguments were made. The court made the calculation and entered the appropriate child support order in, in this case, in my opinion. Thank you. The last item had to do with the. The. Respondents claim of dissipation with regards to payment out of. A joint checking account. I do not believe that there was a notice of dissipation filed. Therefore the claim of dissipation is not appropriate in this circumstance. In the event that the squirt believes that dissipation is. An issue that this court needs to determine. There was a basis in the record for the court to determine that dissipation had not occurred. There was testimony by Mrs. Springer. That the accounts were divided. And then she paid attorneys fees out of her share. So, because all of the. Plains of error are addressed. Discretion. There has not been an abuse of discretion. Or a determination. Contrary to the manifest way to the evidence. We respectfully request that the trial court. And.   The. Trial court. Be affirmed. Thank you. With regard to the dissipation. How did the court. Ultimately divide the remaining funds. That Mrs. Springer suggests she divided in half and then use portions from her half to pay her attorney's fees. What I believe. We'll decide that. Sorry. I believe that the accounts were, were equally divided. And I. I. So. Go ahead. So in other words. It took what was remaining at the end of the. The end of the trial phase. I believe so. With that in half. I believe so. In other words. The portion that the 6,000 plus that she's alleged to have dissipated wasn't there when it was split in half by the court. I believe that to be accurate. I know that in my brief, I. Indicated how the court divided up the various assets. And I believe that. Almost all the assets were divided up. 50 50. Okay. Thank you. Mr. Moore. You have any other argument to make? No, your honor. I am arrested. Thank you. Well, before we move on. Back to Mr. Pete. Justice. Patriot justice. Barbaric. Do you have any other questions? No. Thank you. All right. Well, thank you, Mr. Moore. Mr. Pete. Go right ahead. Thank you, judge. I'll do my best to be brief. I think we only have a couple issues. With Mr. Moore's argument. I think there's some confusion. On the evidence that was sought to have been introduced at trial. I believe that evidence. The additional new evidence. There was some with respect to the account, and there was some to do with the nationwide annuity. The nationwide annuity had never been put into joint tenancy. Mr. Springer had always and consistently alleged that it was his own non-marital property. There was no evidence. Put a trial. To suggest otherwise. And yet the court still divided the nationwide annuity 50 50. There, there was an issue. Where Mr. Clapper. Objected during the trial. And stated that we'd never claimed it was non-marital. During the discovery. However, we did provide those documents. To Mr. Clapper to show that we'd always maintained that it was a non-marital account. However, the court still went ahead and divided it. The issue with new evidence that was sought to have been introduced came about. Subpoenas were issued prior to trial because we didn't have an agreement as to the foundation. And so subpoenas were issued in order to acquire a, an affidavit of the record keeper, a business records affidavit in order to be able to introduce those. At trial. However, we did come to an agreement to be able to introduce stuff without foundation and without, without having to call tons of people to testify to these accounts. But I received the subpoena return. The night of the first day of trial. And with that subpoena return, even though we had previously subpoenaed these documents from the fund manager. It included. Several hundred pages of new documents that weren't disclosed to us previously that we did request to be able to introduce. They were provided to Mr. Clapper. Prior to the hearing that day, that next day. However, the trial judge still. Decided that it was a surprise to attempt to introduce those and. Didn't allow us to introduce those. Regardless of that, there was still a substantial documentation. That was introduced to show that those accounts had been started by Mr. Springer. In the eighties, a good 10 years before the marriage. And so that they should have been. They should have been.  They should have been held. And maintained as his own non-marital property. With respect to the petitions. For rule to show cause. I would. Quibble a little bit with Mr. Moore's characterization. Why we use a rule to show cause primarily. In my experience as a litigator, we use that rule to show cause because it's burden shifting. If a party files a petition for indirect civil contempt or. Then that party that files that petition has the burden to prove the contempt. However, when we, when we do our rule to show cause. On a proper affidavit. And with verification. Of the alleged or then it shifts the burden to the alleged contempt nor to prove why they shouldn't be held in contempt. And so there's a little bit of a different process there. It makes it a little more difficult than for the alleged contempt nor to. Evade that process. I evade that process is the bad form. And so I think there's a little bit of a difference.  Between the alleged contempt nor. To, to show that they shouldn't be held in contempt to, to show that they've complied. But. It just shifts the burden and it allows the court, I guess. To, to guide that process with a more rigid hand than they would with just a petition for contempt on file. So. There's a little bit of difference. I think under that difference. Where the burden shifts to the alleged contempt nor to prove that they shouldn't be held in contempt. I think as a matter of policy, it probably behooves us to make sure that those petitions then do follow the proper form. And they, they do address the law to the letter when they're filed. As opposed to relying on, well, whatever kind of informs you as to what we're looking at. It's good. Just go with it. It's fine. And I, I I'm always hesitant to rely on. That argument to say, well, let's just forge ahead. So. Thank you. Thank you to the court. And I thank you, Mr. Moore for your time today. Thank you. Mr. Pete, before we let council go for the day, justice Gates is just as barbaric. Do you have any questions? No, thank you. No, thank you. Well, gentlemen, obviously we will take the matter under advisement. We will issue an order in due course.